**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

LINDA M.

                          Plaintiff,

          v.                              3:21-CV-57
                                            (DJS)

KILOLO KIJAKAZI,
_Acting Commissioner of Social Security_,

                          Defendant.

_____

**APPEARANCES:**                          **OF COUNSEL:**

LACHMAN, GORTON LAW FIRM     PETER A. GORTON, ESQ.
Attorney for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761

U.S. SOCIAL SECURITY ADMIN.     CHRISTOPHER L. POTTER, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
J.F.K. Federal Building - Room 625
15 New Sudbury Street
Boston, MA 02203

**DANIEL J. STEWART**
**United States Magistrate Judge**

## <u>MEMORANDUM-DECISION AND ORDER[1]</u>

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled for purposes of disability insurance benefits.  Dkt. No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 13 & 14.  Plaintiff has also filed a Reply.  Dkt. No. 17.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion is granted.  The Commissioner's decision is affirmed.

### I. RELEVANT BACKGROUND

#### A.  Factual Background

Plaintiff was born in 1973.  Dkt. No. 12, Admin. Tr. ("Tr."), p. 38.  Plaintiff reported that she has an associate's degree in medical billing and coding.  *Id.*  She has past work experience as a cashier and daycare worker.  Tr. at pp. 79-80.  Plaintiff alleges disability due to diabetes mellitus with hyperglycemia, chronic kidney disease (stage 3), chronic migraines, a blood clotting problem, depression/anxiety, bilateral foot pain, osteoarthritis of both feet, pes planus of both feet, hypertension, a history of left foot tendon repair, blood vessel ruptures in both eyes, and hypothyroidism.  Tr. at pp. 70-71.

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  *See* Dkt. No. 7 & General Order 18.

**B.  Procedural History**

Plaintiff applied for disability and disability insurance benefits in July 2019.  Tr. at p. 70.  She alleged a disability onset date of January 18, 2018.  Tr. at p. 71.  Plaintiff's application was initially denied on September 27, 2019, and upon reconsideration on December 19, 2019, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp. 120, 134-138.  Plaintiff appeared and testified at a hearing before ALJ Elizabeth Koennecke on June 22, 2020.  Tr. at pp. 34-55.  On July 8, 2020, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  Tr. at pp. 10-21.  On November 16, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. at pp. 1-5.

**C. The ALJ's Decision**

In her decision, the ALJ made the following findings of fact and conclusions of law.  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 18, 2018, the alleged disability onset date.  Tr. at p. 12.  Second, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus and migraines.  Tr. at p. 13.  Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  Tr. at p. 15.  Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).

3

Tr. at p. 15.

Fifth, the ALJ found that Plaintiff had past relevant work as a fast-foods assistant manager and fast-foods crewmember, and that she retained the capacity to perform this work.  Tr. at p. 19.  The ALJ, therefore, concluded that Plaintiff is not disabled.  Tr. at pp. 20-21.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than

4

one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff's Memorandum of Law presents a number of issues for the Court's review.  Plaintiff claims that the ALJ improperly evaluated the medical opinions in the record, erred in the assessment of her migraines, failed to consider the limiting effects of diabetic neuropathy, and erroneously concluded that she was able to perform past relevant work.  Dkt. No. 13, Pl.'s Mem. of Law at pp. 6-24.  In response, Defendant asserts that the ALJ properly evaluated the medical opinions of record, and that the

analysis and ultimate decision were both supported by substantial evidence.  Dkt. No. 14, Def.'s Mem. of Law at pp. 3-23.

### A. Evaluation of Medical Opinions

#### 1. *Non-Examining State Agency Medical Consultants*

Plaintiff asserts that the ALJ erred by relying on the opinions of non-examining state agency medical consultants.  Pl.'s Mem. of Law at pp. 12-17.  State agency doctor R. Mohanty, M.D., provided an opinion which assessed Plaintiff's physical residual functional capacity, dated September 27, 2019.  Tr. at pp. 77-79.  On reconsideration of Plaintiff's claim, state agency doctor A. Saeed, M.D., provided a similar functional assessment opinion, dated December 12, 2019.  Tr. at pp. 112-115.  The ALJ found these opinions partially persuasive and generally more persuasive than opinions from other medical providers.  Tr. at p. 17.  Plaintiff alleges that the ALJ's reliance on these opinions was improper.  Pl.'s Mem. of Law at pp. 12-17.  "The most obvious reason these opinions cannot be relied upon," Plaintiff asserts, "is that they did not even find Plaintiff's migraines to be a severe impairment," and so the ALJ's "reasoning is internally inconsistent."  *Id.* at p. 12.  However, the mere fact that the ALJ's decision did not exactly mirror an opinion that she found partially persuasive, in this case because she found migraines to be a severe impairment while the agency doctors did not, does not render the decision internally inconsistent or unsupported by substantial evidence.[2]

---

[2] Plaintiff has limited her argument on this point to an error alleged solely with respect to the evaluation of her migraines, and therefore the Court will address the opinions only regarding that impairment.

7

This is because the ALJ is not required to "adhere to the entirety of one medical source's opinion." *Angela G. v. Comm'r of Soc. Sec.*, 2021 WL 22609, at *6 (N.D.N.Y. Jan. 4, 2021 (collecting cases)). Instead, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Id.* (internal quotation marks and alteration omitted). Nor is the ALJ precluded from relying on the opinions of non-examining state agency doctors. *Pattington v. Comm'r of Soc. Sec.*, 2017 WL 3575682, at *5 (N.D.N.Y. Aug. 17, 2017) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."). Accordingly, the opinions from these sources "may constitute substantial evidence in support of residual functional capacity findings." *Id.* (collecting cases). This is particularly true where, as here, the opinions are found to be consistent with and supported by the evidence in the medical record.

To that point, the Court notes that the opinions of Drs. Saeed and Mohanty were not the only evidence that the ALJ relied upon to formulate Plaintiff's RFC. Rather, the ALJ had the benefit of reviewing not only the entire longitudinal medical record, including multiple medical opinions from various sources and treatment records from various providers, but was also able to listen to Plaintiff's own testimony at the hearing. Based on all that information, ALJ Koennecke concluded that Plaintiff's migraines met the *de minimis* standard to find an impairment severe at step two in the sequential analysis. *See Brandy L. v. Kijakazi*, 2022 WL 675709, at *3 (N.D.N.Y. Mar. 7, 2022)

(stating that "[t]he purpose of the Step Two severity analysis is to screen out only the weakest claims.") (citation omitted).

Plaintiff has argued that reliance on these opinions resulted in an RFC determination that was not supported by substantial evidence. Pl.'s Mem. of Law at pp. 12-13. However, "it is not enough for Plaintiff to merely disagree with the weight an ALJ afforded an opinion or [to] cite evidence which could support Plaintiff's contention." *Pattington v. Comm'r of Soc. Sec.*, 2017 WL 3575682, at \*4 (citing *Brault v. Comm'r of Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)). The Court must defer to the ALJ's resolution of conflicting evidence "where that resolution is supported by substantial evidence." *David W. v. Comm'r of Soc.*, 2018 WL 6088095 (N.D.N.Y. Nov. 20, 2018) (collecting cases). The opinions from Drs. Mohanty and Saeed constituted substantial evidence on which the ALJ was entitled to rely, and that reliance did not establish any internal inconsistency in the decision. Plaintiff has therefore failed to establish any basis for remand with this argument.

Next, Plaintiff alleges that the ALJ improperly assessed the supportability and consistency of the opinions from Drs. Saeed and Mohanty, as they related to her migraines. Pl.'s Mem. of Law at pp. 13-17. Plaintiff argues that because the ALJ did not specifically detail the supportability and consistency of each opinion with respect to its evaluation of her migraines, the resulting analysis was deficient. *Id.* However, Plaintiff has provided the Court with no authority for the proposition that an ALJ is required to address the supportability and consistency of each medical opinion *for each*

*alleged impairment*.  A careful reading of the applicable regulations further assures the Court that this level of specificity is not mandated.  Instead, the ALJ is required only to evaluate the overall persuasiveness of a medical source's opinion and to explain how the supportability and consistency factors were considered in sufficient detail to allow for meaningful review.  20 C.F.R. § 404.1520c(b)(2).  The regulations describe the required source-level articulation as follows:

> Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. **Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis** using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. **We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.**

20 C.F.R. § 404.1520c(b)(1) (emphasis added).

An analysis is sufficient for purposes of meaningful review where, as here, "the evidence of record permits [this Court] to glean the [ALJ's] rationale." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011).

As to the supportability of the state agency doctors' opinions, ALJ Koennecke noted that the RFC findings were accompanied by an additional explanation section which detailed specific objective evidence that the agency doctors relied upon to formulate the limitations.  Tr. at p. 17.  "For example," noted the ALJ, "both Dr.

10

Mohanty and Dr. Saeed referenced X-rays from 2019 that evidenced 'stable' and only 'mild' osteopenia and degenerative disc disease, and clinical exams that noted a normal gait." *Id.* The supportability factor "measures whether the medical opinion is supported by objective medical evidence and accompanying explanations." *Darla W. v. Comm'r of Soc. Sec.*, 2021 WL 5903286, at *8 (N.D.N.Y. Dec. 14, 2021). This is exactly what the ALJ assessed when she noted both the accompanying explanations and references to objective medical evidence.

While Plaintiff argues that the explanations provided by both doctors were deficient based upon the POMS guidelines, this argument does not create a basis for remand. Pl.'s Mem. of Law at pp. 15-16. Although the SSA's policies established in the POMS may provide courts with helpful guidance, the provisions "have no legal force, and they do not bind the Commissioner." *Tejada v. Apfel*, 167 F.3d 770, 775 (2d Cir. 1999) (quoting *Schweiker v. Hansen*, 450 U.S. 785, 789) (cleaned up)). Nor do the POMS guidelines create any judicially-enforceable rights. *Sassower v. Berryhill*, 2018 WL 7968910, at *4 n.5 (S.D.N.Y. Dec. 13, 2018) (collecting cases). The ALJ's supportability assessment of the opinions was therefore proper.

Plaintiff's objections regarding the ALJ's discussion of the consistency of these opinions is again based upon a claim that the ALJ must detail how she considered the consistency of each opinion specifically with respect to Plaintiff's migraines. Pl.'s Mem. of Law at pp. 14-15. "The consistency factor measures whether a medical opinion is consistent with medical and nonmedical evidence in a claim." *Darla W. v. Comm'r*

11

*of Soc. Sec.*, 2021 WL 5903286, at \*8.  The ALJ here specifically cited to evidence in the record that she found to be either consistent or inconsistent with the state agency doctors' opined limitations.   For example, the ALJ compared Dr. Mohanty's determination that Plaintiff was capable of light exertion and occasional postural activities, with the findings from Dr. Jenouri's consultative examination which found that Plaintiff had decreased range of motion in her lumbar spine, hips, and knees, and a bilaterally positive straight leg raise.  Tr. at p. 17 (citing Tr. at pp. 77-79, 795, 797).  She also compared these findings with x-rays which "evidenced 'stable' and only 'mild' osteopenia and degenerative disc disease, and clinical exams that noted a normal gait."  Tr. at p. 17.  Based upon that assessment, the ALJ reasonably concluded that findings supported some limitation in lifting and carrying, but that Plaintiff retained the functional capacity to perform light work.  *Id.*  Similarly, the ALJ evaluated Dr. Saeed's recommended limitation to "avoid concentrated exposure" to noise with evidence that Plaintiff's migraines were partially relieved by Tylenol, and with evidence of normal CT scans and neurological findings.  Tr. at pp. 17-18.  As a result, although the ALJ was not required to specifically state how she assessed the consistency of these opinions with respect to Plaintiff's migraines, it is clear that she considered it.

Moreover, contrary to Plaintiff's assertions, Pl.'s Mem. of Law at p. 13, both opinions did identify and reference Plaintiff's migraines.   Dr. Mohanty noted that Plaintiff allegedly suffered from migraines and identified a July 2019 neurological exam where Plaintiff was seen for headaches.  Tr. at p. 79.  However, Dr. Mohanty went on

to detail that the examination findings were within normal limits, including findings related to the cranial nerves, Plaintiff's extraocular movements were observed to be full, her optic disc margins were clear, and no obvious nystagmus was noted. *Id.* The December 12, 2019 report completed by Dr. Saeed also acknowledged additional evidence received on reconsideration regarding Plaintiff's migraines and noted the same in the additional explanation section. Tr. at pp. 96-97. This opinion added a recommendation to avoid concentrated exposure to noise, which Dr. Saeed indicated was related to Plaintiff's migraines. Tr. at p. 96. Accordingly, Plaintiff's assertions that these doctors failed to address her migraines and are therefore improperly relied upon has no basis and does not warrant remand.

### 2. *Consultative Examiner*

Gilbert Jenouri, M.D., performed a consultative examination of Plaintiff in September 2019. Tr. at pp. 794-797. The ALJ found Dr. Jenouri's opinion persuasive to the extent that it was consistent with the opinions from Drs. Saeed and Mohanty and was supported by substantial evidence in the record. Tr. at p. 17. However, she ultimately chose not to adopt some of Dr. Jenouri's opined limitations. Plaintiff's argument with respect to the ALJ's assessment of Dr. Jenouri's opinion is similar to that advanced regarding the state agency doctors. Plaintiff disagrees with the weight the ALJ chose to assign to Dr. Jenouri's opinion, and asserts that, notwithstanding the ALJ's express finding otherwise, Dr. Jenouri's opinion was not consistent with the evidence. Pl.'s Mem. of Law at pp. 17-18. Again, these arguments are limited to the context of

Plaintiff's migraines rather than pertaining to any of her other impairments.  Plaintiff

also asserts that the ALJ failed to properly assess the supportability and consistency of

Dr. Jenouri's opinion.  Her argument on this point is as follows:

> The ALJ errs because she engages in no discussion at all about the
> inconsistency of Dr. Jenouri's opinion with the medical evidence
> concerning the migraines and likewise engages in no discussion at all
> about Dr. Jenouri's lack of any explanation as to how he considered the
> migraines. Thus, the ALJ again violated her duty to explain how she
> considered the supportability and consistency factors.

Pl.'s Mem. of Law at p. 18.

With this argument, Plaintiff has again misstated the ALJ's burden.  While the

ALJ is required to explain how she considered the supportability and consistency factors

when evaluating medical opinions, there is no requirement that the ALJ engage in such

a detailed analysis with regard to each specific impairment for each medical opinion in

the record.  Instead, the regulations simply require the ALJ state how she considered

these factors, in a manner sufficient to allow this Court to conduct a meaningful review.

The ALJ here detailed Dr. Jenouri's objective examination findings and assessed

the extent to which those findings supported the opined limitations.  Tr. at p. 17.  She

also discussed in some detail the evidence in the record that she found to be inconsistent

with Dr. Jenouri's opinion, including Plaintiff's self-reports, x-ray results, examination

findings and observations, and other objective evidence.  *Id.*  Accordingly, the Court

finds that the ALJ properly assessed both the supportability and consistency of Dr.

Jenouri's opinion and finds no error on this basis.  Likewise, the caselaw is clear that

the opinions of one-time consultative examiners like Dr. Jenouri can constitute substantial evidence upon which a decision may be affirmed.  *See Benitez v. Comm'r of Soc. Sec.*, 2021 WL 4239244, at *15 (S.D.N.Y. Sept. 17, 2021) (citing *Petrie v. Astrue*, 412 F. App'x at 406).

The ALJ was under no obligation to accept every opined limitation from Dr. Jenouri, or from any other medical source for that matter.  The RFC is an administrative finding, not a medical finding, and there is no requirement that the RFC mirror any one medical opinion in the record.  *Scott D. v. Comm'r of Soc. Sec.*, 2021 WL 4481191, at *4 (W.D.N.Y. Sept. 30, 2021).  Nor is the ALJ required "to adopt each and every limitation identified" merely because she gave weight to an opinion.  *Jennifer Lee W. v. Berryhill*, 2019 WL 1243759, at *4 (N.D.N.Y. Mar. 18, 2019).  Rather, "[i]t is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."  *Petell v. Comm'r of Soc. Sec.*, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) (citing *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012)).  Where, as here, the ALJ's conclusions "find reasonable support in the record, courts 'will defer to the ALJ's resolution' regarding the appropriate weight to be afforded to various medical opinions."  *Shyla D. v. Kijakazi*, 2022 WL 798158, at *3 (quoting *Teresa L. v. Comm'r of Soc. Sec.*, 2020 WL 6875254, at *7 (W.D.N.Y. Nov. 23, 2020)).

### B. Evaluation of Plaintiff's Migraines

Plaintiff asserts that the ALJ erred because Plaintiff's migraines were found to be a severe impairment at step two in the sequential analysis, but corresponding limitations were not included in the RFC.  Pl.'s Mem. of Law at pp. 6-12.  Within this argument, Plaintiff claims that the ALJ: (1) improperly required objective evidence to reject the severity and frequency of the migraines; (2) made unsubstantiated inferences; (3) did not consider time off task/absent from work; (4) improperly rejected Dr. Saeed's opined noise restriction limitation; and (5) did not include any other nonexertional limits related to headaches.  *Id.*

As an initial matter, "an ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases."  *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citation omitted).  There is thus no inherent error in an ALJ's determination simply because an ALJ finds a plaintiff has a severe impairment but does not assign corresponding functional limitations.

Plaintiff's argument that it was improper for the ALJ to rely on a lack of clinical findings in her decision not to assign relevant limitations for Plaintiff's migraines is similarly unpersuasive.  The Social Security policy interpretation ruling for evaluating cases involving primary headache disorders specifically states that such a disorder can be established as a medically determinable impairment "by considering objective

16

medical evidence (signs, laboratory findings, or both) from an [acceptable medical source]." SSR 19-4p. In fact, SSR 19-4p states that Social Security regulations *require* that a medically determinable impairment, such as a primary headache disorder, "be established by objective medical evidence from an acceptable medical source." That policy interpretation ruling goes on to explain that "[the SSA] will not use a person's statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an MDI(s). We also will not make a finding of disability based on a person's statement of symptoms alone." SSR 19-4p. It is therefore clear that not only is an ALJ *entitled* to rely on objective evidence to find a primary headache disorder as a medically determinable impairment, but such evidence is in fact *required* by the regulations.

Plaintiff's citation to *Stacy D. v. Comm'r of Soc. Sec*, 358 F. Supp. 3d 197 (N.D.N.Y. 2019), does not persuade the Court otherwise. Objective evidence noted by the reviewing court in *Stacy D.* included neurologist reports which detailed "worsening headaches with new visual features and dizziness … and worsening memory." *Stacy D. v. Comm'r of Soc. Sec.*, 358 F. Supp. 3d at 210. An "MRI revealed a partial empty sella and pseudotumor, and plaintiff required a lumbar puncture to draw spinal fluid to decrease cerebrospinal pressure." *Id.* Based on that record, the Court quite reasonably concluded that it was improper for the ALJ to rely on a lack of *specific* clinical findings, such as an older EEG report, to discount the severity of plaintiff's headaches. *Id.* at 209-210. *Stacy D.* merely recognized that there is no one diagnostic test to conclusively identify or diagnose the presence of migraine headaches. This is not equivalent to a

17

holding that no objective evidence at all is required to establish the presence of a primary headache disorder. Here, in contrast to *Stacy D.*, the ALJ considered a variety of evidence in the record to conclude that additional functional limitations related to Plaintiff's headaches were not warranted.

More specifically, ALJ Koennecke explained that Dr. Saeed's proposed noise limitations were not warranted because the objective medical evidence failed to support Plaintiff's allegations regarding the frequency and intensity of migraine-related symptoms. Tr. at p. 18. The ALJ noted that although Plaintiff did see a neurologist for her headaches, "clinical exams have been generally unremarkable, including intact cranial nerves (7F, 14F)." Tr. at p. 18. Plaintiff's progress reports identified no headache-associated visual changes and no light or sound sensitivity in general. Tr. at pp. 658-659. ALJ Koennecke also identified evidence that contradicted Plaintiff's self-reports regarding her symptoms. For example, the ALJ stated that Plaintiff "testified she began having migraines in 1998, which went away for ten years, but returned with a 'non-stop vengeance' in 2016. Yet, the [Plaintiff's] neurologist noted in April 2019 that [Plaintiff] was presenting 'with a new complaint of chronic headaches' that had been 'ongoing now for over six months,' and that he had only seen her 'once before in 2015 for similar presentation of chronic headaches.'" Tr. at p. 18 (citing Tr. at pp. 658-659). The ALJ was entitled to consider these inconsistent statements when assessing Plaintiff's subjective complaints. *See Robinson v. Comm'r of Soc. Sec.*, 2018 WL 3583236, at *5 (W.D.N.Y. July 26, 2018) ("the ALJ appropriately relied on inconsistent

statements by Plaintiff to determine that [Plaintiff] was less than fully credible."). Similarly, although the ALJ noted that Plaintiff had been treated in the emergency department in December 2019 for a migraine, she was observed at that time to be "in no acute distress" and "lying comfortably, despite complaints of '10/10' migraine pain." Tr. at p. 18 (citing Tr. at pp. 671-673, 679). Records from that visit indicate that her blood sugar "was almost 500," she was neurologically intact, and was "lying comfortably on the stretcher." Tr. at pp. 1015-1018. Plaintiff also reported experiencing some headache relief with Tylenol and other medications. Tr. at p. 658.

While Plaintiff's subjective reports may be relevant evidence concerning the nature and severity of her symptoms, ALJ Koennecke was "not required to accept the [Plaintiff's] subjective complaints without question." *Richards v. Colvin*, 2015 WL 1472039, at *7 (N.D.N.Y. Mar. 31, 2015) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal alteration omitted)). "Rather, the ALJ 'may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.'" *Id.* The ALJ is "the only participant in the disability appellate process who has the 'opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying'" and therefore is the "best-positioned to make accurate credibility determinations." *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 188 (N.D.N.Y. 2019) (quoting *Pollino v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 428, 439 (W.D.N.Y. 2019). As a result, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Id.*

19

Based upon this record, it was not unreasonable for ALJ Koennecke to discount Plaintiff's statements. Nor was it unreasonable for the ALJ to decline to incorporate additional limitations within the RFC related to Plaintiff's migraines. Plaintiff has asserted that the ALJ should have "consider[ed] the extent to which the headaches would cause her to be off-task and/or absent from work" and should have included additional "any other exertional or non-exertional limitations that might be cause[d] by severe headaches (e.g., limitations to lifting, standing, attention/concentration, bending, memory, etc)." Pl.'s Mem. of Law at p. 12. However, none of the opinions that the ALJ found persuasive included any such limitations, and the ALJ expressly chose to reject Dr. Saeed's proposed noise limitation based upon statements from Plaintiff's own neurologist which indicated that she did not have any reported light or sound sensitivity. Tr. at p. 658.

The ALJ did not impose an erroneous requirement that Plaintiff provide evidence of a specific type of diagnostic medical test, but instead considered a variety of evidence in the record to assess Plaintiff's RFC and to discount Dr. Saeed's opined limitation. The ALJ considered the lack of any significant objective findings, notes that Plaintiff was experiencing some relief from conservative treatment such as medication, and inconsistencies in Plaintiff's statements regarding the severity of her symptoms. This consideration resulted in an RFC that was supported by substantial evidence. Remand is therefore unwarranted on this basis, too. *Rosado v. Sullivan*, 805 F. Supp. at 153 ("If supported by substantial evidence, the Commissioner's finding must be sustained even

20

where substantial evidence may support the plaintiff's position") (internal quotation marks omitted).

### C. Appeals Council's Failure to Consider the Opinion of Dr. Alwan

Plaintiff argues that the Appeals Council erred by failing to consider the opinion written by her treating neurologist, Dr. Alwan, and by failing to articulate how persuasive the opinion was found to be. Pl.'s Mem. of Law at pp. 19-21. At the final stage of the administrative process, the regulations authorize a party "to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." *Lisa C. v. Kijakazi*, 2022 WL 2105853, at *9 (N.D.N.Y. June 10, 2022) (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)). "If the new evidence relates to a period before the ALJ's decision, the Appeals Council 'shall evaluate the entire record including the new and material evidence submitted … [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Tammie S. v. Berryhill*, 2019 WL 859263, at *5 (N.D.N.Y. Feb. 22, 2019) (quoting *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996)). The role of this Court on review "is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision." *Lisa C. v. Kijakazi*, 2022 WL 2105853, at *9. "As such, the issue before the Court is whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the [Appeals Council] to take the case." *Id.* (internal quotation marks and citation omitted).

Plaintiff's attorney submitted the August 19, 2020 opinion from Dr. Alwan to the Appeals Council on August 24, 2020, indicating that the opinion had been originally sought approximately five months prior.  Tr. at p. 30.  The Appeals Council stated that the opinion from Dr. Alwan did not "show a reasonable probability that it would change the outcome of the decision" and therefore declined to exhibit the evidence.  Tr. at p. 2.

Based upon this record, the Court cannot say that Dr. Alwan's opinion "altered the weight of the evidence before the ALJ so dramatically as to require" the Appeals Council to review the ALJ's decision.  *Lisa C. v. Kijakazi*, 2022 WL 2105853, at *9.  Although Dr. Alwan's opinion did offer an assessment of Plaintiff's functional capabilities specifically related to migraines, the opinion was brief and offered little in the way of explanation for the limitations identified.  Tr. at pp. 31-32.  For example, although Dr. Alwan opined that Plaintiff suffers from migraine headaches, he did not provide any objective findings to support that diagnosis apart from noting that "headaches = migraine features."  Tr. at p. 31.  Similarly, he offered no explanation as to how he determined that Plaintiff might be off task from 15-20% during a given workday, or that Plaintiff would be absent two days per month.  Tr. at pp. 31-32.  When the ALJ evaluated Plaintiff's headaches, she discussed that Plaintiff received treatment from a neurologist but noted that clinical exams were "generally unremarkable."  Tr. at p. 18.  ALJ Koennecke went on to identify that a CT scan of Plaintiff's brain and head was also unremarkable and there was little objective evidence to substantiate the alleged severity.  *Id.*

To the extent that Plaintiff argues that Dr. Alwan's opinion would have materially changed the underlying disability determination, it is not the proper role of this Court to review the Appeals Council's conclusion regarding the medical opinion." *Lisa C. v. Kijakazi*, 2022 WL 2105853, at *11. Instead, because the new evidence becomes part of the administrative record when the Appeals Council denies review of the ALJ's decision, this Court's role is limited to determining whether, in light of the addition of that opinion to the record, the ALJ's decision is supported by substantial evidence. *Lisa C v. Kijakazi*, 2022 WL 2105853, at *11. Given the ALJ's reliance on other medical opinions, as well as the citation to both objective medical evidence and a lack of objective medical evidence in the record, the Court cannot say that this opinion alters the weight of the evidence so dramatically that the ALJ's decision ceases to be supported by substantial evidence.

As far as Plaintiff's claim that the Appeals Council erred by failing to articulate the persuasiveness of Dr. Alwan's decision, the Court notes that other courts within this District have recently examined this issue in detail and have held otherwise. The Appeals Council, in "merely denying a request for review of a determination," is "under no obligation to explain the weight of the treating source opinion submitted as new evidence following the ALJ's decision." *Lisa C v. Kijakazi*, 2022 WL 2105853, at *11 (citing *Bruce Wayne C. v. Comm'r of Soc. Sec.*, 2022 WL 1304024 (N.D.N.Y. May 2, 2022)). This is because the denial of review does not constitute a disability determination and the Appeals Council is under no obligation to issue a decision along

23

with that denial.  *Bruce Wayne C. v. Comm'r of Soc. Sec.*, 2022 WL 1304024, at *6-7.
Accordingly, there was no error on this basis.

### D. Evaluation of Diabetic Neuropathy

Plaintiff argues that the ALJ failed to consider the limiting effects of diabetic
neuropathy.  Pl.'s Mem. of Law at pp. 21-24.  It is not clear whether Plaintiff is arguing
that the ALJ erred at step two in the analysis by failing to consider whether this was a
severe impairment, or by failing to include associated limitations within the RFC.  The
ALJ acknowledged the presence of "bilateral foot neuropathy" but noted that Plaintiff
"is able to take long walks and bike, indicating no limitation of function."  Tr. at p. 13.
While Plaintiff is correct that the record the ALJ cites for that specific proposition does
not actually contain such a statement, the record does contain multiple similar
documented statements that Plaintiff made to medical providers.  For example, notes
from July 26, 2018 describe that Plaintiff stated she biked, gardened, and took long
walks 4-5 times per week.  Tr. at p. 431.  Notes from July 27, 2018 describe that Plaintiff
was "exercising well, [and] going on the bike frequently."  Tr. at p. 435.  She reported
biking and walking, Tr. at p. 854, and "going outside for long walks."  Tr. at p. 872.

The ALJ also found it relevant that Plaintiff's treating provider stated that the
condition was "not severe" and was "managed easily."  Tr. at p. 13.  Those treatment
notes indicate that Plaintiff continued to walk for thirty minutes once or twice per week,
Tr. at p. 950, and stated that "this is not a severe problem … possibly managed easily
with analgesic rub."  Tr. at p. 952.  The treating doctor advised Plaintiff that "there is no

24

surgery there is no injection there is no medication which will take away her neuropathy but it's a management problem keeping her feet [as] comfortable [as] possible with warm socks and soft slippers etc." Tr. at p. 952.  The statements from Plaintiff's treating provider describing the condition as "not a severe problem" and the evidence indicating that Plaintiff continued to engage in physical activity provides substantial evidence from which the ALJ could conclude that Plaintiff experienced no significant functional limitations from this condition.  In opposition, Plaintiff has cited only to her own self-reports as evidence of a greater level of functional impairment.  The mere existence of some contrary evidence alone, however, does not provide a basis for remand. *Julie B. v. Comm'r of Soc. Sec.*, 578 F. Supp. 3d 345, 349 (N.D.N.Y. 2022) ("If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists.").

### E. Other Arguments

### 1. Plaintiff's Ability to Perform Past Relevant Work

Plaintiff argues that the ALJ erred in her conclusion that Plaintiff retained the ability to perform past relevant work.  Pl.'s Mem. of Law at p. 24.  Her argument on this basis is limited to a single statement that "because the combination of the diabetic neuropathy and the headaches cause Plaintiff to be unable to meet the on-task and attendance requirements of any work," the ALJ erred. *Id.*  Because the Court has already identified that the RFC determination was supported by substantial evidence, this

argument also fails.  The ALJ found that Plaintiff's past relevant work as a fast-foods assistant manager and fast-foods crewmember was consistent with a "light" level of exertion.  Tr. at pp. 19-20.  ALJ Koennecke then continued on to find that, based upon Plaintiff's age, education, RFC, and work experience, the Medical-Vocational Guidelines directed a finding of "not disabled."

## 2. Necessity of Vocational Expert Consultation

Finally, Plaintiff claims that the ALJ erred by failing to call a vocational expert in light of the non-exertional limitations opined by Dr. Alwan and by a treating nurse practitioner.  Pl.'s Mem. of Law at pp. 24-25.  Plaintiff does not advance a specific argument as to how those impairments significantly impact her ability to work, but rather simply states the legal proposition that an "ALJ cannot rely on the Grids if a non-exertional impairment has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert."  Pl.'s Mem. of Law at p. 24, (quoting *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013)).  The ALJ here, however, found that Plaintiff retained the functional capacity to perform a full range of light work with no further non-exertional limitations.  Tr. at p. 15.  The Court has already determined that this RFC was supported by substantial evidence.  Accordingly, vocational expert testimony was not required.  *Selian v. Astrue*, 708 F.3d at 421.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: September 28, 2022
            Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge